STAPLETON, Circuit Judge,
concurring:
I agree that the district court improperly entered summary judgment for a party which had not moved for it and, accordingly, that a remand is required. I take a view of this case materially different from that of my colleagues, however.
The parties agree, as they must, that the short and long term agreements between them were conditioned on DEP approval. The Authority can effectively commit itself with respect to solid waste disposal only if and to the extent that it is authorized by the DEP.[1] The short term agreement was approved by the DEP. The long term agreement was rejected. - -The DEP did, however, approve the Authority’s performance of its long term agreement with Chambers as a part of a contingency or “back up” plan[2] and ordered the Authority to formulate and propose an alternative, primary plan. Performance by the Authority of the long term agreement was thus approved only in the *590 absence of an approved alternative plan, or stated conversely, the DEP did not sanction performance of the long term agreement when an alternative plan suitable to the DEP was in operation.[3]
Contrary to Chambers’ assertion, the DEP’s directive to the Authority to formulate an alternative, more acceptable, plan did not limit the Authority to consideration of waste disposal programs involving solely in-state disposal sites. This is apparent both from the text of the DEP’s certification and from the fact that the DEP subsequently approved a long term plan involving out-of-state waste disposal by Empire.[4]
When the Authority, at the. DEP’s direction, took a fresh look at the available options, it found an alternative approach that it considered more in keeping with the interest of its constituents and that it hoped would be acceptable to the DEP. As directed, it filed a petition with the DEP for approval of a long term solid waste management plan. This plan involved, inter alia, a proposed agreement to send 600-1,000 tons per day. of Passaic County’s waste to the Bergen County Utilities Authority, an inter-district Agreement with Union County for Passaic’s bulky wastes, and a 15 year disposal contract with Empire. The Empire contract called for out-of-state disposal at a site much closer to Passaic County than Chambers’ disposal sites and for significantly lower disposal rates. As Chambers acknowledges, the DEP, at least at this point, was responsible for considering the economic as well as the environmental aspects of district plans.
The DEP did not give immediate, unconditional approval to the Authority’s long term plan. However, on October 7, 1993, it did approve the Empire Agreement for an initial term of two years with a possible renewal for three years. With respect to this and other aspects of the plan, the DEP ordered that further data and analysis be submitted and that the Authority continue to seek in-state disposal capacity.
It is difficult for me to see how Chambers can complain in this context. It knew that the long term agreement was subject to DEP approval. It further knew from the .day of the 1987 certification that it would have no enforceable right to the Authority’s waste if the Authority could come up with a means of disposal that the DEP found preferable to the arrangement with it. If Chambers did not like its position after the 1987 certification and felt, understandably, that the approved contingent arrangement was fundamentally different from the arrangement to which it had agreed, I am confident that no court would have held it bound to the restructured agreement.
I find it even more difficult to understand how Chambers can fault the Authority. The Authority submitted the long term agreement to the DEP and pursued it in good faith. When its application was rejected and it was ordered to submit an alternative primary plan, it did so. While Chambers argues that the DEP’s limited approval of the Empire agreement was inconsistent with its 1987 certification, that complaint is about the DEP, not the Authority.
In my view, the district court correctly concluded on the basis of the current record that the Authority breached no covenant of the long term agreement, express or implied, and that no amount of purported “reliance by Chambers can ... remove the Commission’s power to certify another solid waste plan.” App. at BA 31.
*591 I find unpersuasive the argument that the Authority breached an implied duty.of good faith by proposing an operator of an, out-of-state site other than Chambers imits alternative primary plan. As the magistrate judge explained, the purpose of New Jersey’s “good faith covenant” rule is not to 'impose a duty beyond the original intent of the parties, but rather to prevent a party from taking action which frustrates that intent. The, rule is intended to preserve for a party only “the fruits of the contract.” Association Group Life, Inc. v. Catholic War Veterans of U.S., 61 N.J. 150, 293 A.2d 382, 384 (1972). If the Authority, for example, had failed to submit the long term contract to the DEP for approval or had prosecuted an application for approval in a manner that caused its rejection, the Authority would have breached its covenant of good faith.[5] It is undisputed here, however, that the Authority submitted the long term agreement to the DEP and was not responsible for its rejection. To the extent Chambers’ complains about the Authority, it complains of the Authority’s conduct in response to the rejection of the long term agreement.' But, as the magistrate judge correctly noted, there is no indication in this record that the parties, “when they negotiated the Long-Term Agreement in 1987, had any meeting of the minds concerning the action that they would take if the [DEP] rejected the agreement as the primary plan and accepted it as a contingent plan only.” App. at BA 11. Thus, the conduct of the Authority rélied upon by Chambers as a breach of the covenant of good faith did "not frustrate the intent of the parties at the time of contracting.
Gn this record, I believe the Authority, had it filed a motion, would have been entitled to.summary judgment. It did not so move, however, and Chambers accordingly had no obligation to build a record in opposition to the Authority’s theory of the case.[6] I therefore concur in the court’s judgment remanding this case for further proceedings.

. N.J.S.A. 13:lE-29b.

. The DEP approved "the designation of the Chambers Development Company, Inc. landfill system in Pennsylvania and other states as a component of Passaic County’s contingency plan for the disposal of ash, by-pass, and non-processable waste associated with the operation of the [then contemplated] Passaic County resource recovery facility for the time the facility is operational until the year 2002.” App. at BA 24. The resource recovery facility was never- constructed.

. The district court, in its November 1992 decision, correctly read the DEP's 1987 certification in this way. Its November 20, 1992, injunction read:
Unless and until directed to the contrary by a valid certification of the New Jersey Department of Environmental Protection and Energy, the PCUA shall continue operating under the terms and conditions of the Long-Term Agreement for the Grant and Acquisition of a License for Ash Residue Waste Disposal. Provided, however, that nothing in this Order shall be construed as restricting any proceeding by any party before the NJDEPE seeking approval or disapproval of any primary long-term plan for the disposal of municipal solid waste by the PCUA.
App. at BA 33 (emphasis supplied).

. Thus, the November 20, 1992, injunction made it clear that, despite the long term agreement and the 1987 DEP certification, "any party” was free to seek DEP approval "of any primary long term plan.” App. at BA 33 (emphasis supplied).

. .Chambers relies heavily on Illustration 4 of Restatement (Second) of Contracts § 245 (1979):
A contracts to sell and B to buy A’s rights as one of three lessees under a mining lease in Indian Lands. The contract states that it is "subject only to approval by the Secretary of the Interior," which is required by statute. B files a request for approval but A fails to support B’s request by giving necessary cooperation. Approval is denied and A cannot convey his rights. B has a claim against A for total breach of contract. A’s breach of his duty of good faith and fair dealing contributed materially to the non-occurrence of the condition, approval by the Secretary of the Interior, excusing it.

. Chambers litigated its motion primarily on the theory that the legal effect of the, long term agreement and the 1987 DEP certification was to make it the exclusive supplier of out-of-state disposal services for the 15 years of the contract. It tendered no evidence, if any there be, regarding a mutual expectation of what would occur in the event the DEP rejected their arrangement as presented.